**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NANCY LAMB, ) | CASE NO. 5:13-CV-02232 |
| ) | |
| Plaintiff, ) | JUDGE ADAMS |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | VECCHIARELLI |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff, Nancy Lamb ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On April 28, 2010, Plaintiff filed an application for SSI, alleging a disability onset date of January 1, 2010. (Transcript ("Tr.") 21.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On March 26, 2012, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff was represented by an attorney and testified. (*Id.*) A vocational expert ("VE") also appeared and testified. (*Id.*) On April 26, 2012, the ALJ found that Plaintiff was not

disabled. (Tr. 18.) The Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (Tr. 1.) On October 9, 2013, Plaintiff filed her complaint challenging the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 14, 16.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in evaluating the opinion of consultative examiner Dr. Magleby when determining Plaintiff's mental residual functional capacity (RFC); and (2) the ALJ erred in assessing Plaintiff's credibility.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in July 1972 and was 37-years-old on the date she filed her application. (Tr. 32.) She had at least a high school education and was able to communicate in English. (*Id.*) She did not have any past relevant work. (*Id.*)

### B. Medical Evidence[1]

#### 1. Medical Reports

In November 2009, Plaintiff presented to Portage Path Psychiatry Emergency Services complaining of increased depressive symptoms secondary to relationship difficulties. (Tr. 321.) Plaintiff displayed depressed mood with flat affect, but denied psychosis or suicidal/homicidal ideation. (Tr. 322.) Physicians discharged Plaintiff the same day in improved condition with a diagnosis of depressive disorder and anxiety

---

[1] Plaintiff does not challenge the ALJ's findings with regard to her alleged physical impairments. Thus, the Court's summary of the medical evidence of record will be limited to evidence related to Plaintiff's alleged mental impairments.

disorder, and a Global Assessment of Functioning (GAF) score of 59.[2] (Tr. 324.)

Plaintiff returned to Portage Path Psychiatric Emergency Services in April 2010, complaining of increased depression and grief over the recent passing of her mother. (Tr. 310.) Plaintiff's mood and affect were sad, but her mental status examination was otherwise unremarkable. (Tr. 311.) Plaintiff was assessed with bereavement and cannabis abuse (based on acknowledged one-to-two time monthly use). (Tr. 312.) She was assigned a GAF score of 50.[3]

In August 2010, Plaintiff underwent a psychological examination with Joshua Magleby, Ph.D., at the request of the Bureau of Disability Determination. (Tr. 338.) Plaintiff reported being diagnosed with depression at age seven, posttraumatic stress disorder (PTSD) at age 13, and bipolar disorder at age 30. (Tr. 339.) Plaintiff described her current symptoms as including "'severe' feelings of worthlessness, hopelessness about her life, crying for no reason, anhedonia, down mood, irritability and excessive anger, physiological anxiety symptoms (e.g., excessive sweating, trembling/shaking, shortness of breath, chest pain, dizziness/nausea), hot flashes, feeling like she is going crazy, fear of dying, fear of leaving her house, recurrent thoughts she cannot get out of her mind, and fatigue." (Tr. 339-340.) Plaintiff reported that she needed to have a three-foot radius of personal space, which she referred to as

---

[2] The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association. A GAF score between 51 and 60 indicates moderate symptoms or any moderate difficulty in social, occupation, or school functioning.

[3] A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.

3

her "safe zone." (Tr. 339-340.) Plaintiff's mental status examination was generally unremarkable, showing poor judgment and insight, but stable mood, very normal affect, no evidence of perceptual disturbances, normal thought content, and fair/average memory, executive functioning, common sense, general fund of knowledge, and intelligence. (Tr. 341-342.) Dr. Magleby concluded that the most serious mental symptoms presented were depression, anxiety, irritability, anger, urges to harm herself and others, racing mind, mental fullness, fatigue, and fear of being harmed. (Tr. 342.) Dr. Magleby further noted that Plaintiff's most serious functional problems were social and occupational functioning and poor judgment. (*Id.*)

Based on his examination of Plaintiff, Dr. Magleby opined that Plaintiff had a mild impairment in her ability to understand, remember, and follow instructions and maintain attention, concentration, persistence, and pace to perform simple repetitive tasks and to perform multi-step tasks. (Tr. 343.) Dr. Magleby also opined that Plaintiff had a marked limitation in her ability to relate to others, including fellow workers and supervisors, and in her ability to withstand the stress and pressures associated with day-to-day work activity. (*Id.*)

The record indicates that Plaintiff treated with Sherry Gergis, M.D., and Summer Savon, M.D., Ph.D., for her psychologically-based symptoms during the relevant period. (Tr. 542-547, 631.) The record is devoid of any counseling or treatment records from either physician, however.

In March 2011, Dr. Gergis completed two residual functional capacity evaluations addressing Plaintiff's depression and anxiety. (Tr. 542-547.) Dr. Gergis determined that Plaintiff experienced every symptom of anxiety enumerated on the prepared form

4

including motor tension, hyperactivity, apprehensive expectation, vigilance and scanning, irrational fear, recurrent panic attacks, and recurrent and intrusive recollections. (Tr. 546.) Dr. Gergis also determined that Plaintiff experienced almost every possible noted symptom of depression, including anhedonia, appetite disturbance, psychomotor agitation, decreased energy, feelings of guilt, decreased need to sleep, difficulty concentrating, distractibility, and involvement in risky behavior. (Tr. 542-543.) Dr. Gergis further opined that Plaintiff had "extreme"[4] restrictions in completing activities of daily living and maintaining social functioning and "marked" restrictions in concentration, persistence, or pace. (Tr. 544, 547.)

Dr. Savon completed a medical source statement regarding Plaintiff's mental impairments in March 2012. (Tr. 631.) Dr. Savon indicated that she had treated Plaintiff since June 2011 for the diagnoses of major depressive disorder, rule out bipolar disorder, PTSD, and panic disorder. (*Id.*) In addition, Dr. Savon reported that Plaintiff's GAF scores for the past year had been between 55 and 60 and her prognosis was fair, as she had been able to better control the effects of her impairments with medication. (Tr. 631.) Dr. Savon further indicated that Plaintiff's dependence on medications created ongoing problems with concentration and alertness. (*Id.*)

**2.      Agency Reports**

On September 8, 2010, state agency psychologist Alice Chambly, Psy.D., reviewed the evidence relating to Plaintiff's application and completed a mental residual functional capacity assessment. (Tr. 474.) Dr. Chambly opined that Plaintiff was

---

[4]     "Extreme" was defined on the form as a "[s]evere impairment of ability to function." (Tr. 547.)

5

moderately limited in her ability to: carry out detailed instructions; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. (Tr. 474-475.) Dr. Chambly concluded that Plaintiff was capable of performing a range of simple, routine tasks in settings requiring infrequent contact with others, no strict production quotas, and infrequent changes. (Tr. 477.)

On December 21, 2010, state agency psychologist Cindy Matyi, Ph.D., reviewed Plaintiff's medical records and affirmed Dr. Chambly's opinion, reasoning that Plaintiff had not received any new treatment for her psychological allegations and that there were no apparent clinically significant changes. (Tr. 540.)

**C.    Hearing Testimony**

    **1.    Plaintiff's Hearing Testimony**

Plaintiff lived in a house with her husband and their four children. (Tr. 46.) Plaintiff and her husband home schooled their children. (Tr. 49.)

Plaintiff testified that she smoked marijuana about three times per month. (Tr. 49.) She suffered from headaches and multiple sclerosis (MS). (Tr. 49-51.) She stated that when she experienced flare ups of MS, her whole face would hurt and her eyes would stop working correctly, and she would be admitted to the hospital for at

6

least a week.  (Tr. 51-52.)  Plaintiff further stated that she had crying spells but that the "medication has had them under control."  (Tr. 55.)  She had been diagnosed with depression, clinical number one, and bipolar disorder or panic attacks.  (Tr. 59.)  She had been on depression medication since she was seven years old, and experienced panic attacks about two times per week.  (*Id.*)  When she did not have control of her bipolar disorder, she became a violent person. (Tr. 61.)

Plaintiff testified that she could not do household chores.  (Tr. 55.)  She spent most of her days on the couch watching TV and went to church at least twice per month.  (Tr. 56, 67.)  She had problems following what she watched on TV.  (*Id.*) She testified that she could only concentrate for about two minutes before losing focus.  (Tr. 66.)  Plaintiff had a sister that she talked to once a month and some friends that she talked to when she needed a favor.  (Tr. 55.) When asked whether she had problems getting along with others, Plaintiff responded that she was "kind of a, a mean person to get along with, but I don't try to be."  (Tr. 55-56.)

### 2.     Vocational Expert's Hearing Testimony

Ted Macy, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past work experience who could lift, carry, push, and pull ten pounds frequently and five pounds occasionally; could sit for six hours and stand and/or walk for two hours in a normal workday; could not climb ladders, ropes, or scaffolds; and could occasionally climb ramps and stairs.  (Tr. 73.)  The individual must avoid workplace hazards such as unprotected heights or dangerous moving machinery and must avoid concentrated

exposure to extremes of heat. (*Id.*) The person would be limited to simple, routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others. (*Id.*) The person could not perform work requiring strict production quotas, piece rate work, or assembly line work. (*Id.*) The individual would be limited to only occasional interaction with others. (*Id.*) The VE testified that the hypothetical individual could perform unskilled, sedentary jobs such as a table worker, a bench hand, and a final assembler. (Tr. 74.)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant

8

must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since April 28, 2010, the application date.

2. The claimant has the following severe impairments: endometriosis; degenerative disc disease of the cervical spine; multiple sclerosis; headaches; depression; post-traumatic stress disorder; and personality disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as

9

>   defined in 20 CFR 416.967(a) with certain restrictions.  Specifically, the claimant cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs.  She must avoid extreme heat temperatures as well as avoid workplace hazards such as unprotected heights or dangerous moving machinery.  The claimant is limited to simple, routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety or welfare of others.  The claimant cannot perform work requiring strict production quotas, nor can she perform piece rate work or assembly line work.  The claimant is limited to only occasional interaction with others.
>
> 5. The claimant has no past relevant work.
>
> 6. The claimant was born in July 1972 and was 37-years-old, which is defined as a younger individual age 18-44, on the date the application was filed.
>
> 7. The claimant has at least a high school education and is able to communicate in English.
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Act, since April 28, 2010, the date the application was filed.

(Tr. 22-33.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole. *Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Erred in Evaluating the Opinion of Consultative Examiner Dr. Magleby when Determining Plaintiff's Mental RFC.

In August 2010, consultative examiner Dr. Magleby opined that Plaintiff had a *mild* impairment in her ability to: understand, remember, and follow instructions; maintain attention, concentration, persistence, and pace to perform simple repetitive tasks; and perform multi-step tasks.  (Tr. 343.)  Dr. Magleby also opined that Plaintiff had a *marked* limitation in her ability to relate to others, including fellow workers and supervisors, and in her ability to withstand the stress and pressures associated with

11

day-to-day work activity.  (*Id.*)  The ALJ gave weight to the mild limitations Dr. Magleby provided, but gave no weight to the marked limitations, noting that they were not supported by Dr. Magleby's examination notes and were inconsistent with the weight of the evidence.  (Tr. 30.)  Plaintiff argues that the ALJ's RFC finding does not adequately account for Plaintiff's mental limitations, because the ALJ erred in rejecting Dr. Magleby's opinion that Plaintiff was markedly impaired in her ability to relate to others and withstand the stress and pressures associated with day-to-day work activity.

      RFC is an indication of a claimant's work related abilities despite her limitations.  *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination, S.S.R. 96-8p.  Furthermore, it is well established that an ALJ is not required to discuss each and every piece of evidence in the record for his decision to stand.  *See, e.g.,* Thacker v. Comm'r of Soc. Sec., 99 F. App'x 661, 665 (6th Cir. 2004).  However, where the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC.  *See, e.g.,* Fleischer v. Astrue, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling

96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

Here, the ALJ adequately discussed why he accepted some of Dr. Magleby's opinions while rejecting his opinion that Plaintiff was markedly impaired in her ability to relate to others and withstand the stress and pressures associated with day-to-day work activity.  (Tr. 30.)  The ALJ explained:

> [T]he noted marked limitations are not supported by Dr. Magleby's examinations, nor are they consistent with the weight of the evidence.  Specifically, the claimant reported attending church services about twice a month and she also is home with her family on a daily basis.  Her four children are home-schooled and her husband of about 20 years works evenings. There were no noted difficulties with her familial relations.  Regarding his assessment that the claimant is unable to handle stress, I note that the claimant herself detailed multiple difficult and stressful situations that occurred during her life in a letter to her Congresswoman (*see* Ex 2D). The claimant's ability to manage through these situations is evidence that she maintains a greater ability to withstand stress.

(*Id.*)  The ALJ's assessment of Dr. Magleby's opinion is sufficiently clear to allow meaningful judicial review.  While Dr. Magleby's findings of marked limitations may be favorable to Plaintiff, the ALJ has adequately explained why he chose not to rely on them in determining Plaintiff's RFC.  Plaintiff's disagreement with the ALJ's evaluation of the medical opinion evidence is not a valid basis for reversing the ALJ's decision.  *See Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence

13

would support the opposite conclusion.") The ALJ's RFC determination is supported by the following substantial evidence in the record, as discussed by the ALJ:

- "[Plaintiff] lives with her husband and four children. Although she testified that she spends most of her days lying on the couch and watching television, this is due to physical complaints. She is able to supervise the home-schooling of her four children. She goes shopping. She worked in her garden as recently as lat [sic] year. She admitted she attends church regularly. Her activities of daily living are not as limited as alleged." (Tr. 25.)

- "Regarding social functioning, the claimant has a mild restriction. The claimant reported that she can be mean and irritable. However, she is able to maintain a good relationship with her four children and husband of 20 years. Her family is at home with her during the day as her children are homeschooled, yet no problems are noted. The claimant also reported attending church about every two weeks. Based on this, the claimant has a mild restriction in social functioning." (Tr. 25.)

- "The claimant has a moderate restriction in maintaining concentration, persistence or pace. She watches television throughout the day, but stated that she asks question [sic] during a movie because she becomes confused. She was able to handwrite a well thought out letter to her Congresswoman, however. Furthermore, the claimant showed no difficulty understanding and appropriately responding to questions asked of her during the hearing. Therefore, I find the claimant to have moderate restriction in maintaining concentration, persistence, or pace. This finding is further supported by her ability to supervise the home-schooling of her four children." (Tr. 25.)

- "In addition to the claimant's physical complaints, she also reports symptoms of her mental impairments. She has reportedly carried a diagnosis of depression since about the age of nine (Ex 7F:11). Her treatment, however, does not appear to have been consistent. She has been prescribed an anti-depressant by her primary care physician. There is an indication that the claimant has treated with Summer Savor MD PhD since June 2011; however, there are no corresponding treatment notes (*see* Ex 26F:1). There is also an indication that the claimant has treated with psychiatrist Sherry Gergis MD. However, once again, there are no counseling or other treatment notes in the record." (Tr. 29.)
- "Dr. Magleby's mental status examination revealed very few positive findings. The claimant's appearance and behavior was appropriate

14

> and her thought content generally normal a fair ability to understand more complex directions and language [sic]. She presented with a very normal mood and affect that was not flat, blunted, or restricted. In fact, Dr. Magleby noted that the claimant's mood was observed as stable despite the claimant's assertions of marked mood swings and considerable anxiety (Ex 9F:4). Dr. Magleby did note that the claimant exhibited poor judgment and insight, however." (Tr. 29-30.)

- The ALJ found no record of any episode of decompensation. (Tr. 31.) "There are no psychiatric hospitalizations in the record and no notations regarding her lack of adaptive functioning. All GAF scores in the record show a generally moderate impairment, with the one exception of when the claimant's mother passed away and she was grieving. . . . Furthermore, the record overall, particularly the lack of a significant treatment history, indicates that the claimant is not extremely limited in any regard." (Tr. 31.)

- "Over all, I do not doubt that the claimant experiences symptoms and resulting limitations of her impairments. However, I do not find such limitations to be as severe as she has alleged. The claimant and her husband testified that the claimant is unable to do anything at home other than lie on the couch and watch television all day. Yet the claimant's medical treatment is not consistent with such severe limitations." (Tr. 31.)

The ALJ articulated his reasons for discounting Dr. Magleby's opinion that Plaintiff had marked limitations in social functioning and in her ability to withstand stress, and the aforementioned evidence, as discussed by the ALJ, supports the ALJ's conclusion. The ALJ adequately accounted for Plaintiff's credible mental limitations by limiting her to: simple, routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety or welfare of others; work not requiring strict production quotas, piece rate work, or assembly line work; and work requiring only occasional interaction with others. (Tr. 26.) Accordingly, the ALJ did not err in evaluating the opinion evidence to determine Plaintiff's RFC, and Plaintiff's first assignment of error does not present a basis for remand.

### 2. The ALJ Erred in Assessing Plaintiff's Credibility.

Plaintiff's second assignment of error takes issue with the ALJ's assessment of Plaintiff's credibility. According to Plaintiff, the ALJ "drew unreasonable and unwarranted conclusions from certain of her daily activities." (Plaintiff's Brief ("Pl.'s Br.") at 15.) For the following reasons, Plaintiff's argument is without merit.

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly. *See Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir. 1987); Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987).* However, the ALJ's credibility determinations must be reasonable and based on evidence from the record. *See Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 249 (6th Cir. 2007); Weaver v. Sec'y of Health & Human Servs., 722 F.2d 313, 312 (6th Cir. 1983).* The ALJ also must provide an adequate explanation for his credibility determination. "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.). Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.*

When a claimant complains of disabling pain, the Commissioner must apply a two-step test known as the "Duncan Test" to determine the credibility of such

16

complaints.  See *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).  First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain.  *Id.*  Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain, or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain.  *Id.*  In making this determination, the ALJ must consider all of the relevant evidence, including six different factors.[5]  See *Felisky,* 35 F.3d at 1039–40 (citing 20 C.F.R. § 404.1529(c)).  Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors.  *Bowman v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).

      Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not

---

[5] These factors include the following:
    (1) the claimant's daily activities;
    (2) the location, duration, frequency, and intensity of the claimant's alleged pain;
    (3) precipitating and aggravating factors;
    (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
    (5) treatments other than medication that the claimant has received to relieve the pain; and
    (6) any measures that the claimant takes to relieve his pain.

all, of the relevant factors in his assessment of Plaintiff's mental condition. (Tr. 26-32.) The ALJ examined Plaintiff's daily activities, her treatments and her responses to those treatments, the clinical examination findings, and the physician statements of record. Thus, the ALJ considered the relevant evidence. (*Id.*)

Moreover, in assessing Plaintiff's mental limitations, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. (Tr. 27.) Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, he determined that his RFC assessment adequately accounted for Plaintiff's limitations based on a careful consideration of the evidence. In finding that Plaintiff was capable of performing a limited range of sedentary work despite her mental limitations, the ALJ explained:

- Plaintiff's daily activities, which included supervising the home-schooling of her children, shopping in stores, gardening (as recently as last year), tending to personal care, watching television, and attending church twice per monthly, demonstrated a greater social and cognitive ability than she alleged. (Tr. 25.)

- "The claimant reported that she can be mean and irritable. However, she is able to maintain a good relationship with her four children and husband of 20 years." (Tr. 25.)

- Plaintiff's mental health treatment of record was sparse. (Tr. 31.) The record does not contain any counseling or therapy notes from a mental health professional establishing that Plaintiff engaged in ongoing treatment for her psychological conditions during the relevant period. (*Id.*) The ALJ observed that although Plaintiff and her husband testified that Plaintiff is unable to do anything at home other than lie on the couch and watch television all day, Plaintiff's sparse medical treatment is not consistent with such severe limitations. (*Id.*)

- Dr. Savon reported that Plaintiff's GAF scores for the past year had

18

> generally been between 55 and 60, indicating moderate symptoms. (Tr. 31.) Dr. Savon also noted that Plaintiff's prognosis was fair and that with medication she was better able to control the effects or her impairments. (*Id.*)

• Plaintiff did not require any psychiatric hospitalizations during the relevant period and there are no notations regarding her lack of adaptive functioning. (Tr. 31.)

Thus, the ALJ did not rely only on Plaintiff's activities of daily living and her ability to write a letter to her Congresswoman to find that Plaintiff was capable of more than she alleged despite her mental limitations. The ALJ specifically compared Plaintiff's alleged mental health symptoms to other evidence in the record and found that Plaintiff's subjective complaints were inconsistent with the objective medical evidence in the record. This inconsistency is an appropriate basis for an adverse credibility finding. See *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.") Accordingly, Plaintiff's second assignment of error does not present a basis for remand.

## VI.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: August 4, 2014

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).